## WRENN v. REED.

### No. 1807.

Court of Civil Appeals of Texas. Waco.

Oct. 15, 1936.

Rehearing Denied Nov. 12, 1936.

852

Oltorf & Oltorf, of Marlin, for plaintiff in error.

C. R. Glass, of Marlin, for defendant in error.

GALLAGHER, Chief Justice.

This suit was instituted by defendant in error, Frank A. Reed, against plaintiff in error, H. E. Wrenn, to recover the sum of $875. The parties will be designated as in the trial court. Plaintiff claimed the sum sued for as the value or net proceeds of the resale by defendant, for an additional consideration, of his interest in a certain oil lease to which he alleged defendant held the legal title in trust for him to the extent of one-eighth thereof. Defendant asserted title to said lease in himself and another, to the exclusion of plaintiff.

The case was tried by the court without a jury and judgment rendered for plaintiff for the sum of $437.50.

■ This case, while instituted originally in the district court, is one in which a county court might, under our Constitution and laws, have exercised original jurisdiction. Ordinarily, the disposition made by this court of such cases is final. R.S. art. 1821, as amended by Acts 1929, c. 33, § 1 (Vernon's Ann.Civ.St. art. 1821). When consideration of such a case results in the affirmance thereof, no formal opinion is required. R.S. art. 1873; Associated Indemnity Corporation v. Gatling (Tex. Civ.App.) 75 S.W.(2d) 294, and authori-

ties there cited. We will, however, recite, as briefly as we can, the principal contentions presented by the defendant in this appeal and the conclusion reached by us with reference thereto.

■ ■■ Defendant's principal contention is that the testimony is insufficient to support any recovery herein by the plaintiff. The facts involved are voluminous and complicated. We do not deem it necessary to set out in detail either plaintiff's pleadings or the entire testimony. The finding of the court in favor of the plaintiff was general. Every issuable fact must therefore be considered found in his favor if there is any evidence to support the same and the evidence must be read in the light most favorable thereto, rejecting all evidence favorable to the opposite contention and considering only the facts and circumstances which tend to sustain such finding. Hines v. Kansas City Life Ins. Co. (Tex.Civ.App.) 260 S.W. 688, 690, pars. 2 and 3, and authorities there cited; London & Lancashire Ins. Co. v. Higgins (Tex.Civ.App.) 68 S.W.(2d) 1056, pars. 1 and 2. Applying the rule so announced to the testimony introduced in this case, we find that same is sufficient to support an affirmative finding of the material facts hereinafter recited. On June 18, 1931, M. A. Bletsch held the legal title to an oil and gas lease on 17.57 acres of land situated in Gregg county. While Bletsch had a fractional interest in said lease, he held the remainder thereof in trust for plaintiff, defendant, and another. On said last-named date, Bletsch assigned said lease to C. J. Webster Oil & Gas Company, which, in addition to the burdens then imposed thereby on the holder of such lease, agreed to pay to Bletsch the further sum of $43,925 in cash out of a certain fractional part of the oil produced and marketed therefrom. Bletsch assigned the cash payment so promised to J. C. Fountain as trustee, for distribution in stipulated proportions to himself, to plaintiff, to defendant, and to others. All of such distributees admittedly held an interest in the lease so assigned and defendant was fully cognizant of such holding. The assignment of said lease as aforesaid contained, for the protection of the owners thereof, both legal and equitable, a specific stipulation for the prompt and effective development of the lease, and the further requirement that said assignee should promptly drill such offset wells as might be reasonably required to protect the

leasehold interest and estate from drainage by wells upon adjacent premises, and provided for the rescission or cancellation of such assignment in event of the failure of said assignee to do so. Shortly thereafter, Bletsch, plaintiff, and defendant, and possibly other owners of said lease at the time it was assigned to said Oil Company as aforesaid and who were entitled to receive distributive shares of the proceeds of a part of the oil produced therefrom, claimed that said assignee had violated the provision requiring the drilling of offset wells, that its title to such leasehold was on that account subject to forfeiture, and threatened to take steps to cancel the assignment and recover such leasehold estate. The result of such claim and threat was an agreement of compromise which met the approval of Bletsch, plaintiff, and defendant. By the terms of such compromise the C. J. Webster Oil & Gas Company, assignee as aforesaid, agreed to reconvey or reassign said lease as to 7.57 acres of the land covered thereby, in consideration of the release of its obligation to drill offset wells on the remainder of the tract and a proportionate release of its obligation to pay the sum aforesaid out of the oil produced and marketed by it from the remainder of the tract. A question arose as to whom the lease on said 7.57 acres of land should be reassigned. Bletsch, who had up to the assignment of said lease to the C. J. Webster Oil & Gas Company, been acting as purported owner and as trustee for all the owners of an equitable interest therein, had become financially embarrassed and it was considered that he was no longer in a position to act as trustee. Plaintiff wanted such reassignment made to him, and defendant wanted the same made to himself. Defendant, in requesting that the reassignment be made to him, told Bletsch that neither of them would ever see a cent of the proceeds if the reassignment was made to plaintiff, and made depreciating remarks about him. Bletsch was at that time under some financial obligation to defendant. Bletsch thereupon had the reassignment made to defendant as he requested, but it was his (Bletsch's) intention at the time that the interest of the respective parties after such reassignment should be the same as before he made said assignment to said Oil & Gas Company. Such reassignment was consummated on November 27, 1931. According to the terms thereof, defendant assumed a proportionate part of the obligation of said company to pay, out of a fractional part of the oil produced and marketed from such acreage, the aforesaid sum of $43,965, which obligation Bletsch had assigned to Fountain as aforesaid. Fountain, on November 27, 1931, released said Oil & Gas Company from the payment of such proportionate part of its said obligation. Fountain, on November 30, 1931, released said Oil & Gas Company from its obligation to drill additional or offset wells on the remaining 10 acres of the tract. Defendant, on November 28, 1931, assigned the oil and gas lease on said 7.57 acres of land to the Wells & Gann Drilling Company, in consideration of which assignment it agreed to pay Fountain the conditional payment assumed by defendant to be made out of a fractional part of the oil produced and marketed from the premises as aforesaid, and further promised to pay to defendant the additional sum of $7,750 out of a fractional part of the oil produced and marketed from said tract. The right to receive the last recited payment or payments was assigned by defendant to Steiren & Keonig for the sum of $3785 cash. Said sum, after paying some minor expenses, was divided equally between defendant and Bletsch, or Bletsch's daughter. There was testimony that the payments so assigned were worth at the time the sum of $5,677. Defendant expressly instructed Bletsch not to pay any part of the proceeds of such sale to plaintiff, or any other claimant, and threatened to dissolve business relations with him if he did so.

Defendant's contention that the testimony is insufficient to support any recovery by plaintiff herein, as above recited, is based on the fact that plaintiff alleged that defendant, at the time he received from the Webster Oil & Gas Company the reassignment of the lease on the 7.57 acres, agreed with Bletsch, who negotiated the compromise and directed execution of such reassignment, that he would hold title thereto in trust for all the persons interested in the lease at the time he assigned the same to said Oil & Gas Company, and defendant's further insistence that the testimony fails to show an express agreement to do so. We do not deem it necessary to determine whether the testimony as a whole is sufficient to support a finding that the defendant, at the time he accepted such reassignment, declared that he would hold title thereto

854

in trust for himself and the other original owners. The pleadings of plaintiff and defendant considered together cover with considerable particularity the several transactions above recited, and such allegations are ample to charge said lease in the hands of the defendant with a resulting trust as well as an express one. Apparently the moving and effective consideration for the reassignment of the lease on said 7.57 acres of land by said Oil & Gas Company was the abandonment of any attempt to cancel or forfeit its lease on the remainder of the tract and the release of its obligation to drill additional or offset wells thereon. Said Oil & Gas Company was also in that connection released from any further responsibility for the development of the 7.57 acres so assigned and the payment of any sum or sums out of the oil which might, in the course of such development, be produced and marketed therefrom. Under the implied findings of the court, as above recited, the plaintiff had a one-eighth interest in such moving consideration and defendant knew of such interest, or was charged with knowledge thereof. Under such findings, defendant held plaintiff's interest in the lease on said 7.57 acres of land in trust for him, and having assigned the same to another and having sold the obligation of the assignee to pay an additional cash consideration therefor, was properly required to account to plaintiff for his interest therein. 42 Tex.Jur. p. 635 et seq., pars. 34, 35 and 36.

Defendant further contends that plaintiff's recovery herein is excessive. This contention is based on the fact that the testimony showed that while defendant assigned to Steiren & Keonig the additional cash consideration of $7,570 which the Wells & Gann Drilling Company had promised to pay him out of oil produced and marketed from said lease for the sum of $3,785, he allowed Bletsch to retain the sum of $285 for purported expenses and also one-half of the remainder. Defendant repudiated plaintiff's claim to any interest in said additional payment and the money received from said assignees therefor, and gave specific instructions that he (defendant) should not be allowed to participate in the proceeds of such sale. As a result of such repudiation, he was liable to plaintiff for his interest in such obligation at the time he sold the same to the parties aforesaid, and the uncontradicted testimony showed that the value

of such interest was greater than his recovery. Such contention is therefore overruled.

We have examined all defendant's contentions and have found that none of them requires the reversal of the judgment of the trial court, and the same is therefore affirmed.